UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATRESHA DAWSON,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM E. REUKAUF,<br>Acting Special Counsel,<br><br>Defendant. | Civil Case No. 07-1354 (RJL)<br><br>**FILED**<br>NOV 1 9 2010<br>Clerk, U.S. District & Bankruptcy<br>Courts for the District of Columbia |

MEMORANDUM OPINION
(November 18, 2010) [#39]

Plaintiff Natresha Dawson ("Dawson") brings this action against William E. Reukauf in his official capacity as Acting Special Counsel (the "defendant"), alleging that her former employer, the Office of Special Counsel ("OSC"), violated the Whistleblower Protection Act of 1989 (the "WPA"), Pub. L. No. 101-12, 103 Stat. 16 (codified at various sections of 5 U.S.C.), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* Currently pending before the Court is the defendant's Motion for Summary Judgment. Upon review of the pleadings, the entire record, and the applicable law, the defendant's motion is GRANTED.

## BACKGROUND

Dawson was hired by OSC on June 26, 2005, as a GS-9 paralegal to work in the OSC's Customer Service Unit. Def.'s Ex. 19, Robert Wise Aff. 2, Nov. 30, 2006 ("Wise Aff."). The Customer Service Unit was created in 2005 to respond to hotline calls to

1

OSC and provide information to federal employees who may wish to file a complaint with OSC. *See id.* When the Customer Service Unit first became operational in August 2005, it was staffed by plaintiff and Denise Toney ("Toney"), another paralegal. *See* Wise Aff. 2; Def.'s Ex. 25, Denise Toney Aff. 1, Nov. 14, 2006 ("Toney Aff."). Their primary responsibility was to answer the OSC's hotline calls from 8:30 a.m. to 5:00 p.m. during weekdays. *See* Wise Aff. 2.

In September 2005, Dawson asked Robert Wise ("Wise"), the Director of Human Resources and her first line supervisor, whether she could adjust her work schedule to start her days at 7:30 a.m. *See id.* at 3. Wise denied her request because he "could not afford to do that on a regular basis and still staff the call center." *Id.* Shortly thereafter, plaintiff began to complain to Wise about a variety of office-related issues, including the offices in which she worked, an additional request for a flexible schedule, a request for a promotion, and the work assigned to her. *See* Def.'s Ex. 28. When plaintiff's complaints were not addressed to her satisfaction, she sent email messages not only to Wise but to his supervisor and to the head of the entire agency. *See* Def.'s Ex. 28. In response, Wise issued a letter of counseling in which he admonished Dawson for circumventing the chain of command and contacting the Special Counsel directly. *See* Def.'s Ex. 29.

Beginning in January 2006, plaintiff's attendance at work became erratic. *See* Def.'s Ex. 57. In February 2006, she began receiving "continuation of pay" ("COP") benefits that she requested for work-related stress.[1] *See* Def.'s Ex. 47. From January 20

---

[1] "Continuation of pay" benefits under the Federal Employees Compensation Act allow an employee who is out of work due to traumatic, job-related injury to continue to receive pay up to

to February 20, 2006, Dawson missed ten full days of work under COP status. *See* Def. Ex. 57. As such, plaintiff's productivity suffered so much that Wise had to communicate his concerns about the timeliness of her and Toney's responses to hotline calls. *See* Def.'s Ex. 32.

In addition to her unavailability, Dawson's behavior at work was, to say the least, erratic. In late February 2006, Toney reported to the Human Resources office that plaintiff had made comments in December 2005 about "shooting up" the workplace. *See* Toney Aff. 4-8. Toney stated that when Dawson "made the comment, she also made a gesture with her first finger and her thumb sticking up. . . . She then moved her finger around the room and made a sound like a machine gun going off—'tch, tch, tch, tch.'" *Id.* at 5. In an email, plaintiff denied the incident, claiming that she was "IN HIGH FEAR FOR MY LIFE AND SAFETY" and accusing her superiors and co-worker of fabricating the entire account to intimidate, harass, and threaten her life. Def.'s Ex. 68.

Conflicts within the workplace continued in March 2006. On March 20, 2006, for example, Wise attempted to talk to Dawson in the hallway of OSC, as it was the first time that he had seen her at work in several days. Wise Aff. 6. After plaintiff refused to talk to him, Wise gestured for her to come into his office but she gave a "snippy response" and walked away. *Id.* at 6-7. Wise then emailed Dawson, reprimanding her for "unprofessional and insubordinate" behavior. Def.'s Ex. 36. Plaintiff replied to Wise and his supervisor, claiming that Wise had falsified the story to "slander" her personal

---

forty-five calendar days. *See* 5 U.S.C. § 8118; Def.'s Ex. 47 at 4. These benefits are administered by the Department of Labor's Office of Workers Compensation Policy and not the employing agency. *See* 5 U.S.C. § 8118.

3

and professional reputation. Def.'s Ex. 37. She also indicated that she was "interested in filing an EEO complaint based on sexual harassment and gender discrimination of Mr. Wise's actions towards me today, this outright lie among other things." *Id.* The following day, the Deputy Special Counsel responded to Dawson in support of Wise's actions and stated, "I assume this will not continue. If it does, we will take appropriate actions." Def.'s Ex. 40. Plaintiff once more responded with a lengthy email accusing Wise of a race-based conspiracy against her. Def.'s Ex. 41.

On March 28, 2006, Dawson submitted a note from Susan White ("White"), MA, LCPC, who stated that plaintiff was in treatment with her office and that it was "not advisable for Ms. Dawson to return to work until such time as her condition is improved and her associated symptoms are diminished." Def.'s Ex. 42. Curiously, plaintiff also submitted a note from D. Singh ("Dr. Singh"), MD, stating that she was under his care and *could* return to work on March 29, 2006. *See* Def.'s Ex. 43. On March 30, 2006, Dawson emailed her supervisors, stating "I am out on sick leave indefinitely due to doctor's orders." Def.'s Ex. 54. She asked to be placed on COP status for two full weeks in April 2006. *See* Def.'s Exs. 54-55. OSC challenged her request, however, because the forty-five day period that began to run when plaintiff initially received COP benefits in February 2006 had already expired. *See* Wise Aff. 6; Def.'s Ex. 52. Undaunted, Dawson persisted in requesting COP benefits for the month of April. Wise informed her that the medical documentation she had offered did not provide a satisfactory basis for awarding sick leave and asked her either to provide sufficient medical documentation by April 19, 2006, or to risk being placed in AWOL status. Def.'s Ex. 46. Amazingly, plaintiff not

4

only failed to provide the information requested, but instead submitted a further request for COP benefits on April 21, 2006. *See* Def.'s Exs. 48-49, 54. OSC again controverted her claim, explaining that she was placed on AWOL status because her COP period had ended and she had failed to provide adequate medical documentation for leave based on health reasons or to designate any other leave status. *See* Def.'s Ex. 54 at 8-10.

In response, Dawson changed direction and asserted that she had a disability and was entitled to reasonable accommodation. *See* Def.'s Exs. 59-67. On June 15, 2006, plaintiff requested as "disability accommodation" from OSC both "reassignment" and a "maxiflex schedule." Def.'s Ex. 61. OSC sent White a series of questions to gather additional information regarding Dawson's request for accommodation for the diagnosis of mixed anxiety and depressive mood. *See* Def.'s Ex. 66 at 4-5. In response, White indicated that plaintiff was suffering from work-related stress because of conflicts with Wise. *See* Def.'s Ex. 66 at 4. Nonetheless, in response to the third question, "In your opinion can Ms. Dawson perform the essential functions contained in the attached job description with or without accommodation," White checked yes next to "Without accommodation." *Id.* In fact, Dawson herself sought clarification from White regarding this response, only to report to OSC that "Ms. White stands 100% behind her responses. As explained, #3 is probing my ability to perform my duties, which she believes I can perform my duties without any adjustments to my duties." Def.'s Ex. 67 at 1. On July 5, 2006, OSC denied plaintiff's request for reasonable accommodation because the medical documentation, i.e., the correspondence with White, did not establish that Dawson was a qualified individual with a disability entitled to reasonable accommodation. *See* Def.'s

Ex. 66.

Despite the denial of her various requests for COP and for accommodations for her alleged disability, Dawson continued to miss work. On August 22, 2006, OSC finally concluded it had no choice but to remove her from federal service. *See* Def.'s Ex. 70. It sent her a notice indicating that she had been AWOL for the last 101 consecutive days, that she was aware that she was AWOL, and that her prolonged absence had impaired OSC's operations. *See id.* at 2. Dawson responded on September 6, 2006, denying any wrongdoing and seeking to place the blame on her supervisors. *See* Def.'s Ex. 71. After a complete review, OSC removed plaintiff from federal service on October 16, 2006. *See* Def.'s Ex. 73. All told, Dawson was employed at OSC for approximately sixteen months, the last six months of which she was AWOL.

During her employment, Dawson filed five prohibited personnel practice complaints, *see* Def.'s Exs. 6-14, and three EEO complaints, *see* Def.'s Exs. 1-5. The EEO allegations in the instant complaint concern the subject matter of plaintiff's second and third EEO complaints, filed on May 30, 2006 (*"Dawson II"*), and February 2, 2007 (*"Dawson III"*), respectively.[2] In *Dawson II*, plaintiff alleged discrimination based on sex, disability, and reprisal for prior EEO activity based on (1) Wise's motioning with his fingers on March 20, 2006; (2) his denial of her COP benefits on April 6, 2006; (3) his placing her on AWOL leave status on April 6, 2006; and (4) Wise and/or his supervisor's rejecting her request for reassignment to a different supervisor and a maxi-flex working

---

[2] The parties agree that plaintiff's first EEO complaint is not at issue in the instant action. *See* Pl.'s Reply in Supp. of Mot. for Leave [#32] 3; Def.'s Opp'n to Pl.'s Mot. for Leave [#31] 6.

schedule. *See* Def.'s Ex. 2-3. In *Dawson III*, plaintiff alleged discrimination based on sex, race, disability, retaliation, and sexual orientation when OSC removed her from federal service. *See* Def.'s Ex. 4-5. The OSC issued final agency decisions in *Dawson II* and *Dawson III* on May 2, 2007, and June 21, 2007, respectively, denying all of Dawson's requests for relief. *See* Def.'s Exs. 3, 5. Dawson filed the present civil action on July 25, 2007, and her First Amended Complaint on February 15, 2009.

## ANALYSIS

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotations omitted).

As an initial matter, Dawson argues that summary judgment is inappropriate because genuine issues of material facts are in dispute. Unfortunately for plaintiff, however, the alleged factual disputes concerning, e.g., the description of her job responsibilities, the reasons for denying her promotion to GS-11, and what she characterizes as retaliatory behavior, including the letter of counseling and the

7

investigation into her shooting threat, are insufficient to raise an issue for trial and preclude summary judgment. Dawson has merely presented a number of conclusory statements unsupported by any evidence in the record, aside from her own self-serving affidavits, mischaracterizes evidence contained in the record, and contests facts that are simply immaterial to resolving the defendant's motion. As such, she has not demonstrated that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" such that a grant of summary judgment is precluded. *Id.* at 249; *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule.").

Dawson's further attempt to call into question the authenticity or admissibility of much of the evidence submitted in support of the defendant's motion must also fail. The exhibits submitted by the defendant were part of the administrative record and include, *inter alia*, sworn affidavits based on personal knowledge and correspondence that Dawson herself wrote, received, or otherwise submitted to OSC. *See, e.g.*, Def.'s Exs. 25, 41. Most important, in making her argument, plaintiff fails to identify a single document or specific portion of a document that should be stricken as inadmissible hearsay. *See* Pl.'s Opp'n 22-24. She merely describes Rule 56(e) and relevant case law and argues that the Court should strike the exhibits that do not meet the evidentiary standard. Without more, her argument to strike unspecified exhibits is unavailing.

Plaintiff's arguments as to the merits of the summary judgment motion fare no

investigation into her shooting threat, are insufficient to raise an issue for trial and preclude summary judgment. Dawson has merely presented a number of conclusory statements unsupported by any evidence in the record, aside from her own self-serving affidavits, mischaracterizes evidence contained in the record, and contests facts that are simply immaterial to resolving the defendant's motion. As such, she has not demonstrated that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" such that a grant of summary judgment is precluded. *Id.* at 249; *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule.").

Dawson's further attempt to call into question the authenticity or admissibility of much of the evidence submitted in support of the defendant's motion must also fail. The exhibits submitted by the defendant were part of the administrative record and include, *inter alia*, sworn affidavits based on personal knowledge and correspondence that Dawson herself wrote, received, or otherwise submitted to OSC. *See, e.g.*, Def.'s Exs. 25, 41. Most important, in making her argument, plaintiff fails to identify a single document or specific portion of a document that should be stricken as inadmissible hearsay. *See* Pl.'s Opp'n 22-24. She merely describes Rule 56(e) and relevant case law and argues that the Court should strike the exhibits that do not meet the evidentiary standard. Without more, her argument to strike unspecified exhibits is unavailing.

Plaintiff's arguments as to the merits of the summary judgment motion fare no

better. Dawson asserts violations of three statutes: the WPA, Title VII, and the Rehabilitation Act. Notwithstanding all of her claims, however, Dawson has marshaled *no* evidence that any employment decisions or interactions were related to her race, sex, alleged disability, or protected activity. As such, for the following reasons, her claims fail as a matter of law.

In her first cause of action, plaintiff alleges that she was removed from federal service because she made protected disclosures, in violation of the WPA. I disagree. The disclosures that Dawson asserts were protected pertain, under a generous reading of her pleadings, to the separation of the OSC's Customer Service Unit in which she worked and the Complaints Examining Unit, the hiring of a staffer that she disagreed with, and her complaints about various management decisions regarding personnel matters related to her. *See* Am. Compl. ¶¶ 13-16, 18, 21; Pl.'s Opp'n 26-27. A disclosure is protected if the discloser had a reasonable basis to believe what was disclosed evidenced "(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A). None of Dawson's disclosures come within this ambit of protected disclosures because for not a single one of them could "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence" one of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Furthermore, the separation of the Complaints Examining Unit and the Customer Service Unit and the hiring that Dawson objected to were matters of common

knowledge and thus could not qualify as protected disclosures. *See Francisco v. Office of Pers. Mgmt.*, 295 F.3d 1310, 1314 (Fed. Cir. 2002). In addition, a number of her disclosures, particularly those relating to job-related disagreements regarding her own personnel matters, were made directly to the alleged wrongdoer and were not protected for that reason either. *See Willis v. Dep't of Agric.*, 141 F.3d 1139, 1143-44 (Fed. Cir. 1998); *Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995). In short, Dawson's alleged disclosures simply do not constitute the type of disclosures protected under the WPA. Accordingly, summary judgment is granted for the defendant as to the WPA claim.

In her second cause of action, Dawson alleges that she was subjected to a hostile work environment and disparate treatment based on her sex and race as well as retaliation for complaining about that discrimination, in violation of Title VII. Once again, Dawson's allegation reflects a fundamental failure to understand the applicable Title VII law in our Circuit. In determining whether a work environment is a hostile work environment, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (internal quotation marks omitted). Indeed, the Supreme Court itself has emphasized that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Id.* at 788 (internal quotation marks omitted). Here, Dawson has not alleged that any of her supervisors or, for that matter, any of her coworkers subjected her to

derogatory insults because of her race or gender or her complaints of discrimination. Plaintiff merely asserts, based solely upon her own statements, that she was "subjected to frequent harassment and hostile actions." Pl.'s Opp'n 35. In fact, the only incident that she has alleged regarding *any* comments based on race or gender is a single conversation that she overheard regarding Wise and his fiancée, about which there is significant dispute. *See* Def.'s Ex. 2 at 11; Wise Aff. 10-12; Toney Aff. 2-4. But even assuming that the conversation unfolded as Dawson alleges, this distinct incident is not sufficiently "extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. Finally, plaintiff's attempt to portray Wise as the perpetrator of a hostile work environment by asserting that he called the police to report the shooting comments she made is even more valueless because Wise, in fact, did *not* report the threat, nor did he participate in the investigation. *See* Def.'s Ex. 26, Doug Stickler Aff. 3-5, Nov. 3, 2007. In the end, it is clear that no reasonable juror could interpret the facts of this case as giving rise to a claim for a hostile work environment.

As to her disparate treatment claim, Title VII establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). If the employee has suffered an adverse action and if the employer has asserted a legitimate, nondiscriminatory reason for the action, the Court proceeds to the question of discrimination *vel non*. *Id.* at 494. In doing so, the Court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find

11

that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* Dawson has not!

Here, Dawson complains of a number of employment decisions that could, in theory, possibly rise to the level of adverse employment actions, such as the decision to contest her requests for COP benefits, the denial of her request for a flexible work schedule, and the decision to remove her from federal service. As to each, however, OSC has articulated legitimate, non-discriminatory reasons for its decisions. Indeed, OSC's first challenge to her request for COP benefits was based on her failure to provide sufficient evidence linking any physical or mental ailments to anything that occurred in the workplace. *See* Def.'s Ex. 47 at 14. OSC controverted her second request for COP benefits because her initial forty-five day period had expired, there was insufficient evidence linking any injury to the workplace, and she failed to provide sufficient medical documentations. *See* Def.'s Ex. 54. Wise denied her request for a flexible work schedule because of the need to staff the Customer Service Unit during fixed hours. *See* Wise Aff. 2. Finally, Dawson was removed from government service because she was AWOL for six months and had given no indication that she intended to return to work. *See* Def.'s Exs. 70-73. As with her hostile environment claim, Dawson merely relies on circumstantial statements that she herself conjures to allege disparate treatment and pretext. Significantly, this is done without any reference to a specific statement regarding her race, gender, or complaints of discrimination, and Dawson does not attempt to rebut any of OSC's legitimate non-discriminatory reasons. Thus, from an examination of the

record, it is clear that plaintiff has not provided sufficient evidence for a reasonable juror to find that OSC's asserted non-discriminatory reasons were not the actual reasons for any of the adverse actions. Without more, her claim of discrimination based on race or sex must fail.

Next, with respect to her retaliation claim, Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). As with discrimination claims, if the employer offers a legitimate, nondiscriminatory reason for its actions, a court should proceed to the question of retaliation *vel non*. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008). As already discussed, Dawson has not provided any evidence to demonstrate that OSC's reasons for any materially adverse actions she may have suffered were either pretextual or unworthy of credence. Rather than addressing OSC's reasons for its actions, plaintiff again relies on her own conclusory statements, none of which overcome the reasons OSC has described for the employment decisions at issue here. Therefore, the Court must grant summary judgment for the defendant as to the Title VII retaliation claim as well.

In her third cause of action, Dawson alleges that she was subjected to

13

discrimination based on a failure to accommodate her disability and retaliation for opposing that discrimination, in violation of the Rehabilitation Act. Plaintiff argues that OSC denied her the reasonable accommodations of reassignment, presumably to a different supervisor, and a maxi-flex schedule after she was diagnosed with "Adjustment Disorder with Mixed Anxiety and Depressed Mood . . . secondary to conflict with her supervisor at work." *See* Def.'s Ex. 59. To establish a *prima facie* case of discrimination for failure to accommodate, the plaintiff bears the burden of showing: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Brown v. Snow*, 407 F. Supp. 2d 61, 67 (D.D.C. 2005) (emphasis omitted). Because OSC has proffered legitimate, non-discriminatory explanations for denying her requested accommodations, the Court applies the same analysis as in Title VII claims. *See Baloch*, 550 F.3d at 1197 (applying *Brady's* summary judgment analysis to Rehabilitation Act claims).

As detailed above, the information that OSC received from Dawson and her care providers, White and Dr. Singh, was inconsistent and did not establish that Dawson had a disability that required reasonable accommodation. *Compare* Def.'s Ex. 42 (White's March 28, 2006 letter) *with* Def.'s Ex. 43 (Dr. Singh's note). When OSC sought further information directly from White, she indicated that Dawson *could* perform the duties of her position with or without accommodation. *See* Def.'s Ex. 66 at 4-5. Dawson herself confirmed that this was not a typographical or administrative error, and that White stood

"100% behind her responses." *See* Def.'s Ex. 67 at 1. Accordingly, OSC denied plaintiff's accommodation requests because the information provided did not indicate that she was an individual with a disability that required any sort of accommodation guaranteed by the Rehabilitation Act. Not surprisingly, Dawson has not provided any evidence to rebut this legitimate, non-discriminatory reason for denying her accommodation requests. She merely points to White's responses to OSC's follow up questions to establish disability discrimination, even though that evidence in fact establishes that Dawson *could* perform her duties *without* any accommodation. Thus, plaintiff has provided insufficient evidence for a reasonable juror to conclude that OSC discriminated against her because of a disability. Nor can the evidence in this record support her additional claim that she was retaliated against because she complained about disability discrimination. Simply put, Dawson did not receive any accommodations because there was *no* reason for OSC to accommodate her. Therefore, her claims for discrimination and retaliation in violation of the Rehabilitation Act must also fail.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment and DISMISSES the action in its entirety. An Order consistent with this decision accompanies this Memorandum Opinion.

[signature]
RICHARD J. LEON
United States District Judge